**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

---

SAMUEL R. HUMPHREYS,        )
                         )
       **Plaintiff,**        )
                         )
**v.**                   )       **No. 11-2514-STA-tmp**
                         )
**BANK OF AMERICA;**      )
**BAC HOME LOANS SERVICING, LP**  )
**f/k/a COUNTRYWIDE HOME LOANS**  )
**SERVICING, LP, CORP.,**     )
                         )
       **Defendants.**     )

---

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

---

Before the Court is Defendants Bank of America and BAC Home Loans Servicing, LP f/k/a Countrywide Home Loans Servicing, LP, Corp.'s Motion for Summary Judgment (D.E. # 40) filed on February 28, 2013. Plaintiff Samuel R. Humphreys has responded in opposition, and Defendants have filed a reply brief. For the reasons set forth below, Defendants' Motion is **GRANTED**.

## BACKGROUND

Plaintiff alleges that Defendants are liable for violations of the Truth in Lending Act ("TILA") and the Tennessee Consumer Protection Act ("TCPA") related to Plaintiff's efforts to obtain a loan modification on his home mortgage. The following material facts are not in dispute for purposes of summary judgment unless otherwise noted. On May 14, 2004, Plaintiff Samuel R. Humphreys entered into a loan agreement with Countrywide Home Loans, Inc. ("Countrywide") and executed a promissory note and Deed of Trust (collectively the "loan") in favor of Countrywide in

1

the amount of $800,000.00. (Defs.' Statement of Undisputed Facts ¶ 1.) The loan was a refinance of a previous loan which Plaintiff had entered into with Wells Fargo Bank, N.A. and related to real property located at 214 Tuckahoe Cove, Memphis, Tennessee 38117. (*Id.* ¶ 2.)[1] Plaintiff adds that he selected the loan because he wanted an interest-only mortgage at the lowest possible interest rate, and the introductory rate on the loan was 1.25%. (Pl.'s Statement of Add'l Facts ¶ 2.) The loan was re-computed on a twelve month average. (*Id.*) Plaintiff had several options for making monthly payments but Plaintiff made only the minimum monthly payments. (*Id.*) Plaintiff's monthly payment rose from $2,666.01 at origination to $4,024.19 by July 2009, an increase of 7.5% annually. (*Id.*) Plaintiff never voluntarily made payments toward the principal. (*Id.*) Plaintiff also struggled to make the payments as his monthly minimum payment increased. (*Id.*)

Defendant Bank of America, as successor by merger to BAC Home Loans Servicing, LP f/k/a Countrywide Home Loans Servicing, LP4, has been the servicer of the loan since May 17, 2004. (Defs.' Statement of Undisputed Facts ¶ 3.) On July 7, 2006, the ownership of the loan was transferred to ZUNI 2006-OA1, which currently owns the Loan, and there have been no other transfers of the ownership of the loan. (*Id.* ¶ 4.) Plaintiff disputes the transfer of the loan to ZUNI by arguing that Defendants have failed to produce documentary evidence to prove the transfer of

---

[1] Plaintiff states that Defendant's Statement of Undisputed Facts ¶ 2 is disputed. However, Plaintiff has not cited to record evidence that demonstrates why a genuine dispute about Defendant's statement exists. Rather Plaintiff simply cites his statement of additional facts. The Local Rules of Court permit a non-moving party at summary judgment to provide a concise statement of additional facts which the non-moving party asserts are disputed. Local R. 56.1(b). The Court finds that none of Plaintiff's additional facts actually demonstrate that Defendant's Statement of Undisputed Facts ¶ 2 is disputed. Local R. 56.1(b)(3). Therefore, the Court finds that Defendant's Statement of Undisputed Facts ¶ 2 is undisputed for purposes of summary judgment. Fed. R. Civ. P. 56(e)(2) ("If a party . . . fails to properly address another party's assertion of fact . . ., the court may consider the fact undisputed for purposes of the motion."). The Court considers Plaintiff's additional facts below.

ownership of the loan.  (Pl.'s Statement of Add'l Facts ¶ 4.)[2]  According to Plaintiff, Defendants'

discovery responses admit that Defendants cannot verify the accuracy of the information regarding

the transfer of ownership and acknowledged that the promissory note and deed of trust may not have

been assigned to ZUNI.  (*Id.*)  Plaintiff also argues that Defendants have not adduced proof of an

executed trust pooling and servicing agreement, showing that Plaintiff's loan was transferred to

ZUNI in July 2006.  (*Id.*)

The only steps Plaintiff took to determine if his loan had been transferred involved his

inquiries or inquiries made on his behalf by his representative from Memphis Area Legal Services

("MALS") asking Bank of America who owned the loan.  (Def.'s Statement of Undisputed Facts ¶

5.)  Plaintiff adds that Bank of America simply responded that it did know who owned the loan or

that it could not divulge the information.  (Pl.'s Statement of Add'l Facts ¶ 5.)  Plaintiff further states

that based on his experience as a financial advisor, he did not believe that the identity of the owner

of the loan was readily ascertainable once it was securitized.  (*Id.*)

Sometime in October 2008, Plaintiff contacted Bank of America to inquire about a

modification of the loan because he was concerned about a potential increase in his monthly

payments.  (Def.'s Statement of Undisputed Facts ¶ 6.)  Plaintiff adds that he had made contact with

_____

[2] As previously mentioned, Plaintiff has produced a statement of additional facts in
response to Defendant's Rule 56 Motion.  *See* Pl.'s Add'l Facts in Resp. to Defs.' Statement of
Material Facts (D.E. # 45-2).  The Court finds that Plaintiff's statement of additional facts does
not comply with Local Rule 56.1(b), which requires that "[e]ach such disputed fact shall be set
forth in a separate, numbered paragraph . . . ."  Here Plaintiff's additional fact statements are not
presented in separately numbered paragraphs.  The purpose of the Local Rule is to permit the
other party to respond to each fact individually, which then allows the Court to determine
whether a fact is in dispute.  In this case Defendants' reply highlights Plaintiff's failure to follow
the Local Rules and argues that the Court should disregard Plaintiff's additional facts.  Because
Plaintiff's statement of additional facts is very brief, the Court will consider the evidence cited by
Plaintiff and will not require Plaintiff to re-file his statement in a proper form.

Countrywide about late payment fees as early as 2005 and that in 2008 and 2009 he inquired about relief under the terms of the settlement between Countrywide and the Tennessee Attorney General. (Pl.'s Statement of Add'l Facts ¶ 6.)   Plaintiff asserts that he met the eligibility requirements for relief under the settlement.  (*Id.*)  On and around January 22, 2009, Plaintiff submitted a hardship letter and other financial documents to Bank of America to be considered for a modification of the loan.  (Def.'s Statement of Undisputed Facts ¶ 7.)[3]  According to Defendant, Plaintiff admits that no representative of Bank of America ever guaranteed Plaintiff a modification of his loan.  (*Id.* ¶ 8.) Plaintiff responds that there is no evidence that Bank of America had authority to negotiate a loan modification. (Pl.'s Statement of Add'l Facts ¶ 8.)  As a result, Plaintiff never had the opportunity to negotiate a loan modification with any party who possessed the authority to do so.  (*Id.*)

In a conversation on February 10, 2009, Bank of America representative Coleman Saucier informed Plaintiff that he was not qualified for a modification of his loan because his payments were current and he was not scheduled for a recast.  (Def.'s Statement of Undisputed Facts ¶ 9.)  In a conversation on February 12, 2009, Bank of America representative Jan Lee told Plaintiff that he was not qualified for a modification of his loan because he was not within 90 days of a recast.  (*Id.* ¶ 10.) Plaintiff also acknowledges having a conversation with a "lady" who was a representative of Bank of America in or around early 2009 who advised him that he was either not eligible or not qualified for a modification of his loan because he was not delinquent.  (*Id.* ¶ 11.)  However, the representative in paragraph 11 did state that she could "not advise [Plaintiff] to not pay" on his loan.  (*Id.* ¶ 12.)

---

[3] With respect to the statement at Defendant's Statement of Undisputed Facts ¶ 7, Plaintiff's responds, "Disputed in Part.  *See* Additional Facts."  Pl.'s Resp. to Statement of Undisputed Facts ¶ 7.)  Plaintiff's statement of additional facts, however, never refers to Defendants' Statement of Undisputed Facts ¶ 7.  Therefore, the Court finds that the fact is undisputed for purposes of summary judgment.

In or around February 2009, Plaintiff enlisted the help of MALS to assist him in further discussions with Bank of America regarding a modification of his loan. (*Id.* ¶ 13.) A MALS attorney, TeShaun Moore, contacted Bank of America on behalf of Plaintiff and submitted financial documents regarding a possible loan modification. (*Id.* ¶ 14.) According to Defendant, Plaintiff admits that he has no knowledge of Bank of America promising or guaranteeing a loan modification to any representative working on Plaintiff's behalf, including MALS. (*Id.* ¶ 15.) On March 10, 2010 and April 6, 2010, after MALS got involved, Plaintiff again received letters from Bank of America stating that he was not eligible for a loan modification. (*Id.* ¶ 16.) Plaintiff acknowledges that, after being told he was not eligible for a modification of the loan, he did not believe that he was under further consideration for a loan modification, and he does not believe that he is currently under consideration for a loan modification. (*Id.* ¶ 17.)

Plaintiff seeks damages based on his increased monthly mortgage payments, consequential damages as a result of having to borrow additional money to keep his loan current, and non-economic damages related to increasing monthly mortgage payments. (*Id.* ¶ 18.)[4] Plaintiff is current on his monthly mortgage payments related to the loan, and the property is not in foreclosure. (*Id.* ¶ 19.) Plaintiff adds that he has experienced ongoing difficulty in keeping his mortgage current and maintains that he was eligible for loan modification under HAMP and the Countrywide settlement with the state of Tennessee. (Pl.'s Statement of Add'l Facts ¶ 19.)

In their Motion for Summary Judgment, Defendants seek judgment as a matter of law on all

---

[4] With respect to Defendant's Statement of Undisputed Facts ¶ 18, Plaintiff's responds, "Disputed in Part. *See* Additional Facts." Pl.'s Resp. to Statement of Undisputed Facts ¶ 18. Plaintiff's statement of additional facts, however, never refers to Defendants' Statement of Undisputed Facts ¶ 18. Therefore, the Court finds that the fact is undisputed for purposes of summary judgment.

of Plaintiff's claims. As an initial matter, Defendants argue that Plaintiff has failed to prove that BAC Home Loans Servicing, LP engaged in any wrongdoing or had any involvement in Plaintiff's case. In the absence of any evidence that BAC Home Loans is liable to Plaintiff, summary judgment is proper as to BAC Home Loans. Defendants next contend that Plaintiff cannot make out a TILA claim. Plaintiff bases his claim on 12 C.F.R. § 226.39 of Regulation Z, which requires that a borrower receive notice of the transfer of his loan to another party. Defendant argues that Plaintiff has not shown that any transfer of his loan has occurred since November 29, 2009, the effective date of § 226.39. In the alternative, Defendant argues that Plaintiff's TILA claim is time-barred. TILA's one-year statute of limitations began to run within 30 days of the change of ownership of Plaintiff's loan. The only evidence of a transfer of Plaintiff's loan shows that Countrywide transferred Plaintiff's loan to ZUNI in July 2006. Plaintiff has not demonstrated any grounds for tolling the statute of limitations. As such, the TILA claim is out of time. Defendants also argue that they are not "covered persons" for purposes of the TILA disclosure requirement. For these reasons, Defendants assert that they are entitled to summary judgment on Plaintiff's TILA claim.

With respect to Plaintiff's TCPA claim, Defendants argue that Plaintiff cannot prove any deceptive or unfair practice committed by Bank of America related to Plaintiff's attempt at loan modification. Defendants emphasize that there is no evidence of Bank of America ever promising Plaintiff a loan modification or making any other misleading statements to Plaintiff. Defendants further argue that Bank of America properly informed Plaintiff that he was not eligible for relief under the Countrywide settlement with the state of Tennessee. Under these circumstances, Defendants contend that Bank of America did not engage in deceptive or unfair practices related to Plaintiff's proposed loan modification. Additionally, Defendants argue that Plaintiff cannot prove

an ascertainable loss of money or property.  Defendants claim that all of Plaintiff's damages resulted from the terms of his adjustable rate mortgage, and not any conduct of Bank of America.  Therefore, Defendants argue that summary judgment is warranted on all claims.

Plaintiff has responded in opposition to Defendant's Motion for Summary Judgment. Plaintiff does not address Defendant's argument that BAC Home Loans is not a proper party to this action.  Plaintiff has argued that questions of material fact remain about his TILA claim.  According to Plaintiff, his TILA claim is timely because the only undisputed evidence of a transfer of ownership of Plaintiff's loan is Countrywide's change of name (to BAC Home Loans) in April 2009 and merger with Bank of America in July 2011.  Plaintiff challenges the admissibility of an affidavit from Bank of America's Rule 30(b)(6) representative, Jeremy N. Klos-Mayhall.  Klos-Mayhall averred that Bank of America records showed the only transfer of the loan occurred in July 2006 to ZUNI. Plaintiff contends that Klos-Mayhall was not sufficiently familiar with Bank of America record-keeping practices to be competent to testify.  Therefore, the business records exception did not apply. For example, Plaintiff points out that Klos-Mayhall could not explain at his deposition whether ZUNI was a mortgage-backed security or construe other information contained in Bank of America's records about Plaintiff's loan.  Plaintiff also argues that Defendants have produced only an unsigned copy of the agreement that allegedly memorialized the transfer of Plaintiff's loan (and many others). Based on Defendants' failure to prove when the transfer of the loan occurred, Plaintiff suggests that Bank of America may have been the beneficial owner of the mortgage and would qualify as a "covered person" for purposes of Regulation Z.  As such, Plaintiff argues that Bank of America had a duty to disclose the transfer of Plaintiff's loan in July 2011 and failed to do so.

Plaintiff also argues that triable issues remain on his TCPA claim.  Plaintiff states that his

TCPA claim is based on the following conduct of Bank of America: (1) the refusal to disclose the name of the owner of his loan; (2) failure to notify Plaintiff of his eligibility for relief under Countrywide's settlement with the Tennessee Attorney General; (3) misrepresenting to Plaintiff the authority to undertake a loan modification; (4) providing erroneous information to Plaintiff about his eligibility for assistance; (5) failing to seek approval for loan modification from the owner of the loan; and (6) negligently processing Plaintiff's requests for loan modification relief. Plaintiff contends that each of these acts violated Bank of America's duties under HAMP. Furthermore, Plaintiff claims that he was eligible for relief under the terms of the Countrywide settlement. Plaintiff asserts that his was a qualifying mortgage. Plaintiff met the settlement agreement's definition of a "delinquent borrower" because he faced a recast of his payment and likely to become seriously delinquent. Plaintiff adds that questions of fact exist about whether his loan was recast. The evidence shows that a portion of Plaintiff's monthly payments were applied to principal, suggesting that the loan moved from monthly, interest-only payments to amortized payments. Plaintiff goes on to argue that his TCPA claim is also based on Bank of America's lack of authority to negotiate a loan modification and its reliance on obviously erroneous information in rejecting Plaintiff's request for loan modification. For example, Bank of America noted in its file on Plaintiff's account that Plaintiff was "paying for 6 grandchildren's college expenses" when Plaintiff is unmarried and has no children. Therefore, Plaintiff argues that Defendants' Motion for Summary Judgment should be denied.

Defendants have filed a reply brief. Defendants highlight that Plaintiff failed to address Defendant's argument for dismissal of all claims against BAC. Defendants also argue that Plaintiff has no evidence that Bank of America is a "covered person" for purposes of Regulation Z or that a

change of ownership of Plaintiff's loan has not occurred since 2006. While admitting that Bank of America is the servicer of Plaintiff's loan, Defendants dispute Plaintiff's claim that Defendants own the loan. Because Bank of America is only the servicer of the loan, Bank of America is not a "covered person," as the regulations define the term. Defendants further argue that Plaintiff has not created a genuine dispute about Countrywide's transfer of the ownership of the loan in 2006. Defendants respond that a formal assignment or recording of an assignment is not required to transfer ownership of a note under Tennessee law. As for Klos-Mayhall's affidavit, Defendants do not specifically address Plaintiff's argument that the affidavit does not satisfy the business records exception. Defendants do argue that Klos-Mayhall's inability to explain a mortgage-backed security pool has no bearing on his testimony that ownership of Plaintiff's loan transferred in 2006. Likewise, the fact that Defendants produced an unsigned copy of the pooling and servicing agreement applicable to Plaintiff's loan is not relevant to the admissibility of Klos-Mayhall's testimony. Defendants stress that Plaintiff has failed to meet his burden to show a transfer of ownership of Plaintiff's loan since Regulation Z was amended in 2009. Therefore, summary judgment on Plaintiff's TILA claim is proper.

Defendants further assert that Plaintiff has no evidence of unfair or deceptive practices or an ascertainable loss as a result of any unfair or deceptive practice to support his TCPA claim. Defendants claim that Plaintiff has impermissibly expanded the scope of his TCPA claim at summary judgment by arguing that acts other than those alleged in the pleadings or disclosed in discovery form the basis of his claim. On the merits, Defendants contend that Plaintiff has not shown why he was entitled to relief under the terms of the Countrywide settlement. Specifically, Plaintiff has not proven that he was facing a recast of his mortgage because of a negative

amortization trigger.  Defendants argue then that Plaintiff cannot show how Bank of America unfairly denied Plaintiff's request for loan modification.  Without some proof of unfair or deceptive practices, Plaintiff cannot make out his TCPA claim.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides that a party is entitled to summary judgment if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.[5]  In reviewing a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party,[6] and the "judge may not make credibility determinations or weigh the evidence."[7] When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial."[8]  It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts."[9]  These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict.[10]  In this Circuit, "this requires the nonmoving party to 'put up or shut up' [on] the

---

[5] Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Canderm Pharmacal, Ltd. v. Elder Pharms, Inc.*, 862 F.2d 597, 601 (6th Cir. 1988).

[6] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[7] *Adams v. Metiva*, 31 F.3d 375, 379 (6th Cir. 1994).

[8] *Celotex*, 477 U.S. at 324.

[9] *Matsushita*, 475 U.S. at 586.

[10] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

10

critical issues of [her] asserted causes of action."[11]

When determining if summary judgment is appropriate, the Court should ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-side that one party must prevail as a matter of law."[12] Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[13]

## ANALYSIS

The Court holds that Defendant is entitled to judgment as a matter of law on Plaintiff's TILA and TCPA claims. The Court will analyze each of Plaintiff's theories in turn.

### I. Waiver of Claims Against BAC Home Loans Servicing, LP

As a threshold matter, Defendants argue that Plaintiff has not adduced any evidence to establish his claims against Defendant BAC and that Plaintiff has failed to address Defendants' argument on this point in his response brief. Defendants maintain that Countrywide Home Loans Servicing, LP changed its name to BAC Home Loans Servicing, LP on April 27, 2009, and that BAC Home Loans Servicing, LP merged with Bank of America, N.A. on July 1, 2011. The undisputed evidence at summary judgment shows that Plaintiff has not had any contact with or any relationship with BAC nor has Plaintiff identified or alleged any facts to hold BAC accountable for the actions

---

[11] *Lord v. Saratoga Capital, Inc.*, 920 F. Supp. 840, 847 (W.D. Tenn. 1995) (citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989)).

[12] *Anderson*, 477 at 251-52.

[13] *Celotex*, 477 U.S. at 322.

of Bank of America.[14]  It is further undisputed that BAC is merely a holding company and does not make, service, sell, or purchase mortgage loans and, therefore, had no involvement with Plaintiff's loan.[15]  In light of these uncontested facts, Defendants' Motion is **GRANTED** as to Plaintiff's claims against Defendant BAC.[16]

## II. Truth in Lending Act

"TILA requires that creditors make certain disclosures as to the terms of lending arrangements and provides for civil liability for failure to comply with its provisions."[17]  Among the disclosures required under the Act, a creditor that becomes the new owner or assignee of a mortgage loan must give the borrower written notice within 30 days of the sale, transfer, or assignment of the

---

[14] Defs.'s Statement of Undisputed Facts ¶ 20.  Plaintiff argues that he was never told who actually owned his loan.  Pl.'s Add'l Facts in Resp. to Defs.' Statement of Material Facts ¶ 4.  For the reasons discussed herein, the Court holds that the ownership of Plaintiff's loan is not genuinely in dispute.

[15] *Id.* ¶ 21.

[16] Additionally, Plaintiff has failed to address Defendants' arguments on this point in his summary judgment briefing.  District courts in this Circuit routinely grant summary judgment as to claims a plaintiff fails to support or address in a response to a motion for summary judgment.  *Burress v. City of Franklin, Tenn.*, 809 F. Supp. 2d 795, 809 (M.D. Tenn. 2011); *Anglers of the Au Sable v. U.S. Forest Serv.,* 565 F. Supp. 2d 812, 839 (E.D. Mich.2008)*; Dage v. Time Warner Cable*, 395 F. Supp. 2d 668, 679 (S.D. Ohio 2005); *Kattar v. Three Rivers Area Hosp. Auth.*, 52 F. Supp. 2d 789, 798 n.7 (W.D. Mich. 1999).  *See also Clark v. City of Dublin,* No. 05-3186, 2006 WL 1133577, at *3 (6th Cir. Apr. 27, 2006) (where the appellant did not properly respond to the arguments asserted against his ADEA and ADA claims by the appellees in their motion for summary judgment, the appellant had abandoned his ADEA and ADA claims); *Conner v. Hardee's Food Sys.,* No. 01-5679, 2003 WL 932432, at *4 (6th Cir. Mar. 6, 2003) (finding that, "Because Plaintiffs failed to brief the issue before the district court . . . Plaintiffs abandoned their . . . claim."); *Hazelwood v. Tenn. Dept. of Safety*, No. 3:05-cv-356, 2008 WL 3200720, at *8 (E.D. Tenn. Aug. 5, 2008).  Therefore, judgment as a matter of law on Plaintiff's claims against BAC is warranted for this independent reason as well.

[17] *Coyer v. HSBC Mortg. Servs., Inc.*, 701 F.3d 1104, 1109 (6th Cir. 2012).

loan.[18]  The written notice must include the identity and contact information of the new creditor, the date of the transfer, instructions on how to reach a party with authority to act on behalf of the new creditor, the location of the place where the transfer of ownership is recorded, and other relevant information.[19]  The same disclosure requirement is set forth in Regulation Z, the implementing regulation for the Act, at 12 C.F.R. § 226.39.[20]  While TILA itself was amended effective May 20, 2009, and did not require the issuance of implementing regulations,[21] the Federal Reserve issued 12 C.F.R. § 226.39 as an interim rule on November 20, 2009.[22]  Thereafter, the regulation became a final rule with a mandatory compliance date of January 11, 2011.[23]  In order to establish a violation of TILA's disclosure requirement, Plaintiff must show at the very least that Bank of America became the owner or assignee of his mortgage loan as the result of a sale, transfer, or assignment of the loan during the effective period of the amended Act, that is, on or after May 20, 2009.  The Court holds that Plaintiff has failed to make this showing.

---

[18] 15 U.S.C. § 1641(g)(1).

[19] *Id.*

[20] 12 C.F.R. § 226.39(a)(1) (governing mortgage transfer disclosures when an "owner of an existing mortgage loan [acquires] legal title to the debt obligation, whether through a purchase, assignment or other transfer").

[21] Truth in Lending, 74 Fed. Reg. 60143-01 (Nov. 20, 2009) ("[Section] 131(g) became effective immediately upon enactment on May 20, 2009, and did not require the issuance of implementing regulations.  Mortgage loans sold or transferred on or after that date became subject to the requirements of Section 131(g), and failure to comply can result in civil liability under TILA Section 130(a)."); *see also* Helping Families Save Their Homes Act, Pub.L. No. 111–22 § 404, 123 Stat. 1632, 1658 (May 20, 2009).

[22] Truth in Lending, 74 Fed. Reg. 60143-01 (Nov. 20, 2009).

[23] Truth in Lending, 75 Fed. Reg. 58489-01 (Sept. 24, 2010).

The issue presented is whether Plaintiff can prove that Bank of America took ownership of Plaintiff's loan but failed to make the required disclosure to Plaintiff in violation of 15 U.S.C. § 1641(g)(1) and 12 C.F.R. § 226.39(a)(1). The gravamen of Plaintiff's Amended Complaint is that Countrywide originated adjustable rate mortgages ("ARMs") such as Plaintiff's loan for sale on the secondary market,[24] sold the loans as mortgage-backed securities or whole loan pools to a trust,[25] and then retained the rights to service the loans for a fee.[26] According to the Amended Complaint, Countrywide typically retained possession of the promissory notes and the security agreements for loans of this kind even after it sold the loans on the secondary market.[27] Plaintiff alleges that Countrywide's practice breached the standard "pooling and servicing" agreements Countrywide had with the trusts, thereby "throw[ing] into question the ownership of thousands of Countrywide loans. . . ."[28] Consistent with his allegations about the confusion surrounding the ownership of his loan, Plaintiff argues at summary judgment that the only undisputed proof shows Countrywide was the original owner of the note, Countrywide changed its name to BAC in 2009, and that BAC merged with Bank of America on July 1, 2011. Plaintiff argues then that he can establish a transfer of his loan to Bank of America after the effective date of the disclosure requirement and that Bank of

---

[24] Am. Compl. ¶¶ 7, 13.

[25] *Id.* ¶¶ 14, 16.

[26] *Id.* ¶ 15.

[27] *Id.* ¶ 22.

[28] *Id.* ¶¶ 23-24.

America failed to make the disclosure required by § 1641(g)(1) and 12 C.F.R. § 226.39(a)(1).[29]

There is persuasive authority for the proposition that a merger between two institutions could trigger the disclosure requirements of TILA and Regulation Z. According to the Federal Reserve's official staff commentary to Regulation Z, "[d]isclosures are required under [12 C.F.R. § 226.39(a)(1)] when, as a result of a merger, corporate acquisition, or reorganization, the ownership of a mortgage loan is transferred to a different legal entity."[30] The Supreme Court has held that the Federal Reserve's interpretation of TILA and its requirements are worthy of deference so long as the Fed's interpretations are not "irrational."[31] The Court finds the Fed's interpretation of Regulation Z that mergers trigger the disclosure requirement to be rational. In this case a reasonable juror could find that ownership of BAC's mortgage loan portfolio transferred to Bank of America as a result of the merger between these institutions in July 2011. However, the conclusion that Bank of America

---

[29] The Court notes that Plaintiff admitted in his discovery responses that he "was notified of the transfer of the servicing of his loan from BAC Home Loans Servicing LP to its parent company, Bank of America, N.A., effective July 1, 2011." Pl.'s Resp. to Defs.' Request for Admission no. 5 (D.E. # 40-5).

[30] Fed. Res. Official Staff Comment. to Reg. Z, 12 C.F.R. § 226.39, 6 Fed. Res. Reg. Serv. 1184.50 (Apr. 2013), *available at* 2010 WL 3270466. The Federal Reserve Regulatory Service

> is a multivolume looseleaf service published by the Board, containing statutes, regulations, interpretations, rulings, staff opinions, and procedural rules under which the Board operates. Portions of the service are also published as separate looseleaf handbooks relating to consumer and community affairs, monetary policy and reserve requirements, payments systems, and securities credit transactions.

12 C.F.R. § 261.10(4).

[31] *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 566 (1980) ("[W]holly apart from jurisprudential considerations or congressional intent, deference to the Federal Reserve is compelled by necessity; a court that tries to chart a true course to the [TILA]'s purpose embarks upon a voyage without a compass when it disregards the agency's views.").

became the owner of Plaintiff's loan in July 2011 is reasonable only if BAC was the owner of Plaintiff's loan at the time of the merger. On this point Plaintiff's chain of inferences fails.

Bank of America has adduced undisputed proof that a trust known as ZUNI 2006-OA1 took ownership of Plaintiff's loan in July 2006 and that the trust, and not Bank of America, continues to own the loan. Bank of America relies on its summary judgment affidavit, which was provided by Bank of America's Rule 30(b)(6) representative Jeremy Klos-Mayhall. Bank of America has averred that "[a]ccording to BANA's business records, sometime on or about July 7, 2006, the Loan was transferred to ZUNI 2006-OA1, which is the current owner of the Loan" and "[a]ccording to BANA's business records, there have been no transfers in ownership of the Loan since July 7, 2006."[32] For his part Plaintiff has not adduced any evidence to create a genuine dispute about these facts. Based on the record evidence, the Court concludes that Plaintiff cannot prove a transfer of ownership to Bank of America during the effective period of the § 1641(g) disclosure requirement. The record shows that the last transfer of ownership of Plaintiff's loan occurred almost three years before TILA was amended to include the § 1641(g) disclosure requirement. Moreover, the evidence establishes that BAC was not the owner of Plaintiff's loan at the time of its merger with Bank of America in July 2011. Therefore, the Court concludes that Plaintiff cannot make out its TILA claim against Bank of America.[33]

Although Plaintiff has no proof to dispute the ownership of the loan, Plaintiff does argue that Defendants have failed to prove that the transfer of the loan occurred in July 2006. Plaintiff attacks

---

[32] Bank of Am. Aff. ¶¶ 7, 8 (D.E. # 40-7).

[33] In light of these dispositive holdings, the Court need not address the parties' arguments about whether Bank of America was a "covered person," as TILA defines the term.

the admissibility of the Bank of America summary judgment affidavit by arguing that the affidavit does not meet the requirements of Rule 56(c)(4). Plaintiff contends that Klos-Mayhall lacks personal knowledge of Bank of America's record-keeping as to Plaintiff's loan. As such, Plaintiff asserts Klos-Mayhall is not competent to testify about Bank of America's records, and the records would not be admissible under the business records exception to the hearsay rule under Federal Rule of Evidence 803(6).

The Court holds that the Bank of America affidavit is admissible under Rule 803(6) and the business records exception. Pursuant to Federal Rule of Evidence Rule 803(6), a business record is admissible if satisfies the following requirements:

> (1) it must have been made in the course of a regularly conducted business activity;
> (2) it must have been kept in the regular course of that business;
> (3) the regular practice of that business must have been to have made the memorandum; and
> (4) the memorandum must have been made by a person with knowledge of the transaction or from information transmitted by a person with knowledge."[34]

The proponent of the record must make these showings through the testimony of the custodian of the record or another "qualified witness."[35] Plaintiff argues that Klos-Mayhall's deposition testimony calls into doubt his qualifications to testify about Bank of America's "record keeping practices related to Mr. Humphrey's loan."[36] Plaintiff cites Klos-Mayhall's inability to explain the meaning of certain information in the records related to the transfer of ownership of Plaintiff's loan. The Court finds Plaintiff's argument to be unpersuasive. The proponent of business records is a

---

[34] *United States v. Moon,* 513 F.3d 527, 545, n.2 (6th Cir. 2008) (citation omitted).

[35] Fed. R. Evid. 803(6)(D).

[36] Pl.'s Resp. in Opp'n 11 (D.E. # 45).

"qualified witness" for purposes of Rule 803(6) as long as he is "familiar with the record-keeping procedures of the organization."[37] The Sixth Circuit has concluded that "the person laying the foundation for the introduction of the business records" need not have "personal knowledge of their preparation."[38] Here Klos-Mayhall states in Bank of America's summary judgment affidavit that he is "familiar with BANA's record keeping policies and procedures."[39] It is not necessary that Klos-Mayhall have familiarity with all of the details of the records related to Plaintiff's account.[40] Based

---

[37] *Dyno Constr. Co. v. McWane, Inc.*, 198 F.3d 567, 576 (6th Cir. 1999).

[38] *Id.*

[39] Bank of Am. Aff. ¶ 3.

[40] The Court notes that Klos-Mayhall goes beyond simply laying the foundation for the introduction of Bank of America's business records. In fact, the records are not even attached to the affidavit. The affidavit simply states "According to BANA's business records, sometime on or about July 7, 2006, the Loan was transferred to ZUNI 2006-OA1, which is the current owner of the Loan." Bank of Am. Aff. ¶ 7. Defendants arguably use the Bank of America affidavit to prove the contents of the records related to Plaintiff's loan.

Evidence of this sort is typically not admissible under Federal Rule of Evidence 1002, which provides that "[a]n original writing. . . is required in order to prove its content . . . ." Fed. R. Evid. 1002. It is clear that Klos-Mayhall's testimony seeks to prove the contents of the writing and is based solely on his review of Bank of America's business records, and not his personal knowledge of the transaction involving Plaintiff's loan. *Cf. Jackim v. Sam's E., Inc.*, 378 F. App'x 556, 565–66 (6th Cir. 2010). At the same time, Klos-Mayhall is Bank of America's Rule 30(b)(6) representative, and his affidavit is actually titled "Affidavit of Bank of America, N.A." Rule 30(b)(6) requires a person designated to testify on behalf of an organization such as Bank of America to "testify about information known or reasonably available to the organization." Fed. R. Civ. P. 30(b)(6). The information in the affidavit is arguably "information known or reasonably available" to Bank of America.

In any event the Court need not resolve the issue. Plaintiff has not objected to the admissibility of the Bank of America affidavit on this basis. Even if the affidavit was inadmissible, the Court retains the discretion under Rule 56(c)(3) to consider other record evidence on this issue. Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record."). The record includes Bank of America's interrogatory answers, which also establish that a transfer of Plaintiff's loan occurred

on this evidence, the Court holds that Klos-Mayhall is a "qualified witness" to lay the foundation for the introduction of Bank of America's business records.

In the alternative, Plaintiff argues that Defendants have failed to prove the July 2006 transfer of the loan because Defendants have not produced an assignment of Plaintiff's loan from Countrywide to the ZUNI 2006-OAI trust or a recording of an assignment in the chain of title on Plaintiff's property.[41] Defendants have only produced the agreements related to the sale of Plaintiff's loan (and others) in an unexecuted form. Plaintiff has filed portions of the Mortgage Loan Servicing and Purchase Agreement and the Reconstituted Servicing Agreement under seal (D.E. # 46) as part of his response in opposition to the Motion for Summary Judgment. According to Plaintiff, the agreements contemplated the execution of a formal assignment for each loan sold. Plaintiff has not cited a specific page or section of the 67-page exhibit but asserts that these unexecuted documents do not prove a transfer of Plaintiff's loan from Countrywide to the ZUNI 2006-OAI trust.

Plaintiff's emphasis on the absence of documentary evidence of the assignment is misplaced. Defendants have not relied solely on the unsigned servicing and purchasing agreements to prove the sale of Plaintiff's loan in July 2006. In point of fact, Defendants have the Bank of America affidavit,

---

and that Bank of America is not the owner of the loan. Def.'s Resp. to Pl.'s First Set of Interrogatories nos. 3–5, ex. D to Pl.'s Resp. in Opp'n (D.E. # 45-6).

[41] Plaintiff mentions in his statement of additional facts that Defendants "cannot verify the accuracy of the information regarding the transfer of ownership." Pl.'s Add'l Facts in Resp. to Defs.' Statement of Material Facts ¶ 4. Plaintiff cites Bank of America's response to interrogatory number 3 where Bank of America conceded that it could not verify the information about a series of transfers of the loan, including the transfer to "U.S. Bank, N.A. as trustee for Zuni Mortgage Loan Trust 2006-OA1." Def.'s Resp. to Pl.'s First Set of Interrogatories no. 3 (D.E. # 45-6). Plaintiff's objection is noted. However, Plaintiff has not shown how this single statement undermines the other record evidence that the ZUNI 2006-OAI trust took ownership of the loan in 2006 and continues to own the loan.

establishing the transfer of ownership of Plaintiff's loan. Defendants need not adduce additional documentary proof such as the assignment simply because "the document contains facts that are also testified to by a witness."[42] Even if Defendants had sought summary judgment on the basis of the unsigned writings, "a written contract is not required to be signed to be binding on the parties" under Tennessee law. [43] The fact then that Bank of America has not produced an executed copy of the servicing and purchasing agreements does not in and of itself create a genuine dispute about the transfer of ownership of Plaintiff's loan or call into question Bank of America's testimony that a transfer occurred in July 2006.

Furthermore, Plaintiff has cited no authority to support his suggestion that a lack of formal assignment or recording of the assignment somehow disputes the transfer of the note. On the contrary, under Tennessee law, "the lien of a mortgage or trust deed passes, without a special assignment thereof, to the endorsee of a note or transferee of the debt secured by the instrument."[44] In other words, no formal assignment or recording of the assignment is required to transfer

---

[42] *O'Brien v. Ed Donnelly Enter., Inc.*, 575 F.3d 567, 598–99 (6th Cir. 2009) (citing *Allstate Ins. Co. v. Swann,* 27 F.3d 1539, 1543 (11th Cir.1994) ("Rule 1002 requires production of an original document only when the proponent of the evidence seeks to prove the content of the writing. It does not, however, require production of a document simply because the document contains facts that are also testified to by a witness.").

[43] *Staubach Retail Servs.-Se., LLC v. H.G. Hill Realty Co.*, 160 S.W.3d 521, 524-25 (Tenn. 2005). The Court assumes for purposes of summary judgment that Tennessee law would apply to the execution and assignment issues Plaintiff raises in his brief.

[44] *W.C. Early Co. v. Williams*, 186 S.W. 102, 103–104 (Tenn. 1916) (explaining that "[t]he policy of the law is to treat the note as the principal thing and the mortgage as the incident . . . ."); *see also Samples v. Bank of Am., N.A.*, No. 3:12-CV-44, 2012 WL 1309135, at *4 (M.D. Tenn. Apr. 16, 2012) ("The transfer of the note, without more, carried with it the lien created by the deed of trust.") (quoting *Clark v. Jones*, 27 S.W. 1009 (Tenn. 1894)). *Accord Horvath v. Bank of New York, N.A.*, 641 F.3d 617, 623 (4th Cir. 2011) (applying Virginia law).

ownership of a promissory note. The absence of a written assignment or the failure to record such an assignment does not create a genuine dispute about the transfer of ownership of the loan.[45] For these reasons, the Court holds that the evidence cited by Plaintiff does not create a genuine dispute about the transfer of ownership from Countrywide to the ZUNI 2006-OAI trust in July 2006. Therefore, Defendant's Motion for Summary Judgment is **GRANTED** as to Plaintiff's TILA claim.

## III.    Tennessee Consumer Protection Act

Defendants next seek judgment as a matter of law on Plaintiff's TCPA claim. Plaintiff asserts in his summary judgment brief that his TCPA claim is based on the following conduct of Bank of America: (1) the refusal to disclose the name of the owner of his loan; (2) failure to notify Plaintiff of his eligibility for relief under Countrywide's settlement with the Tennessee Attorney General; (3) misrepresenting to Plaintiff the authority to undertake a loan modification; (4) providing erroneous information to Plaintiff about his eligibility for assistance; (5) failing to seek approval for loan modification from the owner of the loan; and (6) negligently processing Plaintiff's requests for loan modification relief. The Court will analyze each issue separately.

## A. Newly Raised Claims

As a preliminary matter, the Court holds that Plaintiff has not alleged each of these theories in his pleadings. Defendants argue that Plaintiff has improperly attempted to expand the scope of

---

[45] The Court further notes that the Deed of Trust states: "The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower." Deed of Trust 9, ¶ 20 (D.E. # 40-4). Additionally, the Adjustable Rate Note states: "I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the 'Note Holder.'" Adjustable Rate Note 1, ¶ 1, ex. A to Defs.' Mot. for Summ. J. (D.E. # 40-3). The Court's holding is not based on these terms. The provisions merely show that the Deed of Trust and the note did not require formal assignment, including a recording in the chain of title or other form of notice, upon the sale of Plaintiff's loan to a third party.

his TCPA claim by raising new grounds for the claim at summary judgment. A plaintiff may not "expand [his] claims to assert new theories" in response to a motion for summary judgment.[46] "At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Rule 15(a)."[47] What is more, when alleging a violation of the TCPA, Plaintiff must plead the circumstances of the unfair or deceptive conduct with particularity.[48] The Amended Complaint in this case alleged that Plaintiff was eligible for relief through the Home Affordable Mortgage Plan ("HAMP") and under the terms of a settlement agreement between Countrywide and the state of Tennessee.[49] Plaintiff alleged that despite his eligibility for relief under these programs, Defendants wrongfully denied his requests for a loan modification.[50] Plaintiff further alleged that BAC's loss mitigation department requested additional information from Plaintiff as a "stalling tactic."[51] The pleadings make no mention of Defendants' failure to disclose the name of the owner of Plaintiff's loan, misrepresentations about Defendants' authority to undertake a loan modification, or a failure to seek approval for loan modification from the owner of the loan. Because

---

[46] *Bridgeport Music, Inc. v. WM Music Corp.*, 508 F.3d 394, 400 (6th Cir. 2007).

[47] *Desparois v. Perrysburg Exempted Vill. Sch. Dist.*, 455 F. App'x 659, 666 (6th Cir. 2012) (quoting *Tucker v. Union of Needletrades, Indus. & Textile Emps.*, 407 F.3d 784, 788 (6th Cir. 2005)).

[48] *Metro. Prop. & Cas. Ins. Co. v. Bell,* No. 04–5965, 2005 WL 1993446, at * 5 (6th Cir. Aug.17, 2005) (applying Fed. R. Civ. P. 9(b) pleading standard to TCPA claim); *Harvey v. Ford Motor Credit Co.,* 8 S.W.3d 273, 276 (Tenn. Ct. App. 1999) (applying Tenn. R. Civ. P. 9.02 pleading standard to TCPA claim).

[49] Am. Compl. ¶¶ 95-99.

[50] *Id.* ¶¶ 100, 102, 109.

[51] *Id.* ¶ 100.

these theories were not alleged in Plaintiff's Amended Complaint, Plaintiff may not raise them for the first time at summary judgment. Therefore, Defendants' Motion is **GRANTED** as to these issues.

## B. Relief Under HAMP

As for Plaintiff's other claims related to his eligibility for a loan modification, the Court concludes that Plaintiff has not carried his burden to prove these theories. In order to recover under the TCPA, a plaintiff must demonstrate "(1) that the defendant engaged in an unfair or deceptive act or practice declared unlawful by the TCPA and (2) that the defendant's conduct caused an 'ascertainable loss of money or property, real, personal, or mixed, or any other article, commodity, or thing of value wherever situated.'"[52] Although the TCPA "does not define the terms 'unfair' or 'deceptive,' the Tennessee Supreme Court has recognized that a deceptive act or practice is a material representation, practice or omission likely to mislead a reasonable consumer."[53] An unfair practice is one which "causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition."[54] The Tennessee Supreme Court has held that whether a particular act is unfair or deceptive is a question of fact.[55] Finally, the TCPA is remedial in nature and should

---

[52] *Pagliara v. Johnston Barton Proctor & Rose, LLP*, 708 F.3d 813, 819 (6th Cir. 2013) (quoting *Tucker v. Sierra Builders,* 180 S.W.3d 109, 115 (Tenn. Ct. App. 2005)); *Carbon Processing & Reclamation, LLC v. Valero Mktg. & Supply Co.*, 823 F. Supp. 2d 786, 826 (W.D. Tenn. 2011).

[53] *Cloud Nine, LLC v. Whaley,* 650 F. Supp. 2d 789, 796 (E.D. Tenn. 2009) (citing *Ganzevoort v. Russell,* 949 S.W.2d 293, 299 (Tenn. 1997)).

[54] *Tucker,* 180 S.W.3d at 116–17.

[55] *Fayne v. Vincent,* 301 S.W.3d 162, 170 (Tenn. 2009).

"be construed to effectuate [its] purposes and intent."[56]

The Court holds that Plaintiff has failed to show how Defendants' denial of his requests for relief under HAMP violated the TCPA. HAMP is a federal program established by the Department of Treasury in 2009 pursuant to the Emergency Economic Stabilization Act of 2008.[57] HAMP exists to encourage the modification of existing mortgages "where foreclosures may be avoidable and modification is in the financial interests of the involved parties."[58] Loan servicers in the HAMP program enter into contracts with Fannie Mae "to perform loan modification services in exchange for financial incentives."[59] As such "participation in HAMP is completely voluntary."[60] Under the terms of their contracts with Fannie Mae, loan servicers agree to consider loan modification for eligible borrowers based on HAMP guidelines.[61] If the borrower meets initial eligibility requirements specified in the HAMP guidelines, the servicer analyzes the loan to determine whether a HAMP modification is warranted.[62] In this case Plaintiff argues that violations of HAMP

---

[56] *Killingsworth v. Ted Russell Ford, Inc.*, 205 S.W.3d 406, 409 (Tenn. 2006) (quoting Tenn. Code Ann. § 47–18–115); § 47–18–102(2) (providing that the TCPA shall be interpreted "liberally" for the purpose of protecting "consumers and legitimate business enterprises from those who engage in unfair or deceptive acts or practices in the conduct of any trade or commerce in part or wholly within this state").

[57] *See Rivera v. Bank of Am. Home Loans.*, No. 09–CV–2450 (LB), 2011 WL 1533474, at *1 (E.D.N.Y. Apr. 21, 2011).

[58] *Phu Van Nguyen v. Bank of Am. Home Loan Servs., LP*, No. 10–CV–01712 (RMW), 2010 WL 3894986, at *1 (N.D. Cal. Oct.1, 2010).

[59] *Hoffman v. Bank of Am.*, No. 10–CV–2171 (SI), 2010 WL 2635773, at *1 (N.D.Cal. June 30, 2010).

[60] *Phu Van Nguyen*, 2010 WL 3894986, at *2.

[61] *Id.*

[62] *Id.*

guidelines may violate state consumer protection laws.  Plaintiff has also argued that Bank of America's actions "violate[d] the spirit, intent, and guidelines of HAMP."[63]  However, Plaintiff has not cited any specific provisions of HAMP or briefed the guidelines of the program in any way.  As a result, Plaintiff has not shown how he was entitled to relief under HAMP guidelines or how Bank of America wrongfully denied him relief under HAMP.  While the issue of whether Bank of America's acts were "unfair" or "deceptive" is typically a jury question, Plaintiff has not met his burden to show how Bank of America failed to satisfy its duties under HAMP.  The Court holds then that Plaintiff has "fail[ed] to make a showing sufficient to establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial."[64]  Therefore, Bank of America is entitled to summary judgment on the HAMP issue

## C.  Relief Under the Agreed Judgment

Likewise, Plaintiff has failed to prove his TCPA claim for Defendants' failure to grant him relief under the terms of the Countrywide settlement.  It is undisputed that the Attorney General for the state of Tennessee entered into an agreed judgment with Countrywide ('the Agreed Judgment') concerning its lending practices in the state of Tennessee and establishing procedures for the modification of certain mortgage loans.[65]  The settlement required Countrywide to consider "a range of affordable loan modification options" for any "Eligible Borrower" with a "Qualifying Mortgage."[66]  The Agreed Judgment defines an "Eligible Borrower" as a borrower "who has a

---

[63] Pl.'s Resp. in Opp'n 15 (D.E. # 45).

[64] *Celotex*, 477 U.S. at 322.

[65] *See* Agreed Final J., ex. 4 to Klos-Mayhall Dep. (D.E. # 45-7).

[66] Agreed J. § 4.3.

Qualifying Mortgage with a first payment date on or before December 31, 2007, . . . secured by an owner-occupied 1-to-4 unit residential property . . . ."[67] The Agreed Judgment defines a "Pay Option ARM" as a "Qualifying Mortgage" for relief under the agreement if the "Eligible Borrower is a Delinquent Borrower and the [loan-to-value ratio] is 75% or more."[68] "Pay Option ARMs" are "adjustable rate first-lien residential mortgage loans" that "during an initial period (and subject to Recast) permit the borrower to choose among two or more payment options, including an interest-only payment and a minimum (or limited) payment."[69] A "Delinquent Borrower" is any borrower whose loan "(a) is Seriously Delinquent on or before the Termination Date [i.e. June 30, 2012], or (b) is subject to an imminent reset or Recast, and in the reasonable view of the CFC servicer, as a result of such reset or Recast is reasonably likely to become Seriously Delinquent on or before [June 30, 2012]."[70] A "Recast" means "in the case of a Pay Option ARM, a contractual payment recast to a fully amortized payment based on a negative amortization trigger."[71] The Agreed Judgment defines

---

[67] *Id.* § 4.1.

[68] *Id.* § 4.2(b)(ii). The Agreed Judgment also treats a "Pay Option Arm" as a "Qualifying Mortgage" if "the Eligible Borrower is Seriously Delinquent and the LTV is 75% or more." *Id.* § 4.2(b)(i). This provision is not applicable here.

[69] *Id.* § 1.2.

[70] *Id.* The Agreed Judgment does not define the term "reset." Even so, the Court finds it unnecessary to construe the term in this case. Plaintiff contends that "he met the definition of a Delinquent Borrower because he faced a Recast of his mortgage during the period in which he was seeking a modification and he was likely to become seriously delinquent on his mortgage as a result of the Recast before the termination date of the agreement." Pl.'s Resp. in Opp'n 17-18. Because Plaintiff has not argued that his loan was "subject to an imminent reset" and instead bases his argument on a "Recast," a term specifically defined in the Agreed Judgment, the Court need not reach the issue of whether Plaintiff's loan was "subject to an imminent reset."

[71] Agreed J. § 1.2.

the term "Seriously Delinquent" to mean "with respect to any residential mortgage loan, that payments of interest or principal are 60 days or more delinquent."[72]

At summary judgment Plaintiff argues that he was eligible for relief under the terms of the Agreed Judgment and that Defendants wrongfully denied him relief in violation of the TCPA. Plaintiff asserts that he was an eligible borrower and that his ARM was a "Qualifying Mortgage." Plaintiff further claims that he was a "Delinquent Borrower," as the Agreed Judgment defines the term, because he faced a "Recast" and was "likely to become seriously delinquent on his mortgage as a result of the Recast."[73] Plaintiff has also adduced evidence that despite his eligibility for relief, Bank of America responded to his requests for loan modification by informing him that he was ineligible. Bank of America explained that Plaintiff was not in default and that the loan was not subject to a recast. While it is undisputed that Plaintiff was not in default, Plaintiff argues that there is evidence his mortgage did recast. Even though his loan was an interest-only loan, according to Plaintiff, Bank of America collected "tens of thousands of dollars in principal payments."[74] Plaintiff maintains that Defendants have never explained to him why he began to make amortized payments on an interest-only loan. Plaintiff suggests that the only explanation for the payments to principal is a recast of his loan. Furthermore, Plaintiff argues that if the loan never recast to fully amortized payments, then Bank of America improperly collected payments from Plaintiff. Plaintiff argues then that he can prove that he was eligible for relief under the terms of the Agreed Judgment.

Defendants respond and emphasize that "Recast" under the terms of the Agreed Judgment

---

[72] *Id.*

[73] Pl.'s Resp. in Opp'n 17.

[74] *Id.* at 18.

occurred only as the result of a negative amortization trigger. Plaintiff has no proof that a negative amortization trigger in his case ever occurred. According to Defendants, Plaintiff's note provided that his terms would "recast" if the principal balance on his loan ever increased to 115% of the original principal balance. Defendants assert that this trigger event has never come to pass and that Plaintiff has never been delinquent on a payment. Without these preconditions, Bank of America correctly informed Plaintiff that he was not eligible for a modification. As for the payments Plaintiff made to the principal of his loan, Defendants argue that Plaintiff's note called for a full payment of principal and interest after five years. For these reasons Defendants contend that Plaintiff was not entitled to relief under the terms of the Agreed Judgment.

The Court holds that Defendants are entitled to summary judgment on this claim. Plaintiff has failed to adduce evidence from which a reasonable juror could conclude that he was entitled to relief under the terms of the Agreed Judgment. It follows that Plaintiff cannot prove that Bank of America acted unfairly or deceptively by denying his request for loan modification. Construing the terms of the Agreed Judgment together, a "Qualifying Mortgage" included a "Pay Option ARM" like Plaintiff's where two conditions were satisfied: (1) a "Recast" of the loan to a fully amortized payment was imminent as the result of a negative amortization trigger, and (2) in the reasonable view of Bank of America, the borrower's payments of interest or principal were reasonably likely to become 60 days or more delinquent on or before June 30, 2012, as a result of the negative amortization trigger. It is undisputed that the negative amortization trigger in this case was the term of the Adjustable Rate Note note that limited Plaintiff's unpaid principal to 115% of the original principal balance.[75] Plaintiff has failed to adduce any evidence to show that the negative

---

[75] *See* Adjustable Rate Note § 3(F).

amortization trigger contained in his note ever occurred.  The original principal balance of Plaintiff's loan was $800,000.00.  In order to trigger the reset of the loan to a fully amortized payment, Plaintiff's principal balance would need to rise to 115% of the original balance, or $920,000.00. While there is proof that Plaintiff's principal balance exceeded the original principal balance, there is no evidence that Plaintiff's principal ever approached 115% of the original balance.  Without this evidence, Plaintiff has not proven that he was entitled to loan modification based on the imminent happening of a negative amortization trigger.[76]  In other words, Plaintiff has failed to show that his mortgage satisfied the Agreed Judgment's definition of a "Qualifying Mortgage."  Therefore, Defendants are entitled to summary judgment on this issue.

Plaintiff raises an additional argument that Bank of America failed to comply with section 4.5 of the Agreed Judgment, which required Bank of America to reach out to borrowers at risk of delinquency.  Bank of America had a duty to direct communications to borrowers like Plaintiff "whose payments are scheduled to change as a result of an interest-rate reset, Recast or expiration of an interest-only term."[77]  Bank of America was to conduct this outreach at least 90 days before the payment change, "inviting" borrowers to contact their loan servicer "if they believe they will not be able to afford their new payments."[78]  Plaintiff has shown that Bank of America failed to give him the notice required by the Agreed Judgment.  Although Plaintiff's payments were not scheduled to

---

[76] Plaintiff has argued that a "Recast" must have taken place because Bank of America began applying some of his payments to principal even though Plaintiff's was an interest-only loan.  The Court considers this argument more fully below in its analysis of Plaintiff's claim that Bank of America negligently responded to his inquiries about his loan in violation of the TCPA.

[77] Agreed J. § 4.5.

[78] *Id.*

29

change as a result of negative amortization trigger, Plaintiff's payments were set to change at the expiration of his interest-only term. The Adjustable Rate Note provided that Plaintiff would begin making a fully amortized payment as his monthly payment on "the fifth Payment Change date," that is on or around July 1, 2009.[79] A reasonable juror could conclude that Bank of America breached its duty to reach out to Plaintiff about seeking relief under the terms of the Agreed Judgment.

Even so, section 4.5 states that in the event a borrower responded to the communications, "the borrower [would] be considered for loan modifications under the eligibility criteria in this Agreed Judgment."[80] As the Court has already held, Plaintiff has not established his eligibility for any of the relief provided by the Agreed Judgment. As such, even though Bank of America failed to communicate with Plaintiff, Plaintiff cannot establish that Bank of America's failure caused Plaintiff to suffer an "ascertainable loss of money or property" or in any way violated the TCPA.[81] Therefore, Defendants are entitled to judgment as a matter of law on this claim.

## D. Negligent Handling of Plaintiff's Account

The only other evidence cited by Plaintiff to support his TCPA claim is the issue of his payments being applied to the principal balance of his loan. While Plaintiff contends that the evidence suggests a negative amortization trigger, Plaintiff has cited no evidence to show that his principal balance ever approached 115% of his original principal balance, an amount that would spring the negative amortization trigger. The evidence arguably relates to Plaintiff's larger complaint

---

[79] Adjustable Rate Note § 3(G).

[80] Agreed J. § 4.5.

[81] *Pagliara*, 708 F.3d at 820 (holding that dismissal of TCPA claim failing to allege an ascertainable loss of money was proper under Rule 12(b)(6)).

about the manner in which Bank of America negligently handled his account and responded to his inquiries. Plaintiff argues Bank of America has never explained to him why it applied some of his payments to principal even though Plaintiff's was an interest-only loan. Although Plaintiff has not adduced any evidence to show when these payments to principal began,[82] it appears to be undisputed that Bank of America has applied a portion of Plaintiff's monthly payments to principal. Klos-Mayhall testified that "quite a bit" of Plaintiff's monthly payment was in fact applied to principal and that the principal balance had dropped "quite a bit" "over the last couple years."[83] It is also undisputed that Bank of America did not clearly explain to Plaintiff why his interest-only payments were applied to pay down his principal. In fact, Klos-Mayhall testified that nothing in Bank of America's records showed that Plaintiff's loan required fully amortized payments or was on an amortized payment schedule.[84] Klos-Mayhall stated that based on his review of Bank of America's records, Plaintiff should have been able to continue making interest-only payments.[85] Plaintiff has also shown that his monthly payments increased annually on July 1 for each year between 2005 and 2009.[86] Plaintiff asserts that he repeatedly tried to get clarification about the increases to his monthly payments but that Bank of America failed to explain the increases or provide an accounting.

---

[82] Plaintiff's memorandum asserts that "as of September, 2008 large amounts of Mr. Humphrey [sic] payments were applied to principal in spite of his wishes." Pl.'s Resp. in Opp'n 18. However, Plaintiff has not cited any evidence to establish his contention about payments to principal beginning in September 2008.

[83] Klos-Mayhall Dep. 58:4-7; 58:22-59:3.

[84] *Id.* at 59:4-17; *see also id.* at 57:19-24.

[85] *Id.* at 58:8-12.

[86] Pl.'s Supp. Answers to Defs.' Interrogatory no. 8 (D.E. # 45-5).

Viewing this evidence in the light most favorable to Plaintiff, a reasonable juror could find that Bank of America did not adequately explain to Plaintiff why his payments were increasing or how his payments were being applied to his principal balance. Such an omission would arguably mislead a reasonable consumer and could cause substantial injury. The Sixth Circuit has stated in *dicta* that a lender's failure to explain clearly how it arrived at a borrower's monthly payment amount or failure to show how it applied the borrower's payments "could mislead the reasonable consumer" for purposes of the TCPA.[87] Under the circumstances the Court need not decide the issue.

Even assuming that Plaintiff has proof of unfair or deceptive conduct, the Court holds that Plaintiff has not shown an "ascertainable loss of money or property" as a result of Bank of America's actions. As the party seeking damages, Plaintiff bears the burden to prove his damages flowing from Bank of America's conduct within a reasonable degree of certainty.[88] Plaintiff must also prove that Bank of America's conduct proximately caused his "ascertainable loss."[89] The Tennessee Supreme Court has noted that the phrase "ascertainable loss" is commonly used in the consumer protection

---

[87] *Hinton v. Wachovia Bank of Del. Nat. Ass'n*, 189 F. App'x 394, 401 (6th Cir. 2006) (remarking in *dicta* that the panel had "no sympathy for a lender that makes it difficult for its debtors to comply with payment obligations"). It should be emphasized that the *Hinton* court had its doubts about whether the lender's "conduct, even if deceptive, might not be covered by the TCPA because it is not clear under Tennessee law that such actions related to a forebearance agreement would be seen as affecting commerce." *Hinton*, 189 F. App'x at 401 n.11 (citing *Pursell v. First Am. Nat'l Bank,* 937 S.W.2d 838, 840-42 (Tenn. 1996)). The Court simply notes that the Tennessee Supreme Court has since held as a general matter that "[n]egligent misrepresentations may be found to be violations of the [TCPA]." *Faye*, 301 S.W.3d at 177. Because the Court is assuming without deciding that Bank of America's conduct violated the TCPA, the Court need not resolve the question.

[88] *Discover Bank v. Morgan*, 363 S.W.3d 479, 496 (Tenn. 2012) (citation omitted).

[89] *Humphreys v. Bank of Am. Corp.*, No. 11-2514-STA-tmp, 2012 WL 1022988, at *12 (W.D. Tenn. Mar. 26, 2012) (citing *White v. Early*, 211 S.W.3d 723, 742 (Tenn. Ct. App. 2006)).

laws of many states.[90]  For purposes of the TCPA, an "ascertainable loss" is "a deprivation, detriment, or injury that is capable of being discovered, observed, or established."[91]  Such a loss is "ascertainable" "if it is measurable, even though the precise amount of the loss is unknown" and "may include either an out-of-pocket loss or a loss of value."[92]  In short, "an ascertainable loss occurs in circumstances where a consumer receives less than what was promised."[93]

Plaintiff argues in his summary judgment brief that "[h]e was required to pay exponentially greater payments" and "lost money as a result of BANA's deceptive acts and practices."[94]  Plaintiff has shown that his monthly payment changed each July 1 between 2005 and 2009.[95]  More specifically, Plaintiff has adduced evidence that his introductory monthly payment beginning in July 2004 was $2,666.01.[96]  As of July 1, 2005, the monthly payment rose to $2,865.96; as of July 1, 2006, the monthly payment increased to $3,080.91; as of July 1, 2007, the monthly payment changed to $3,311.98; and as of July 1, 2008, the monthly payment increased to $3,560.38.[97]  Even though Bank of America failed to explain adequately the increases in Plaintiff's payments or the application

---

[90] *Morgan*, 363 S.W.3d at 495–96 (Tenn. 2012) (citing Victor E. Schwartz & Cary Silverman, *Common–Sense Construction of Consumer Protection Acts*, 54 U. Kan. L.Rev. 1, 21 (2005)).

[91] *Morgan*, 363 S.W.3d at 495 (quoting *State v. New Beginning Credit Ass'n, Inc.*, No. M1999–00461–COA–R3–CV, 2006 WL 1472284, at *8 (Tenn. Ct. App. May 25, 2006)).

[92] *Morgan*, 363 S.W.3d at 496.

[93] *Id.*

[94] Pl.'s Resp. in Opp'n 20.

[95] Pl.'s Supp. Resp. to Def.'s First Set of Interrogatories no. 8.

[96] *Id.*

[97] *Id.*

of his payments to the principal balance of his loan, Plaintiff has not shown how these payments represent an "ascertainable loss" or resulted from any unfair or deceptive conduct of Bank of America.

Rather than being unexplainable increases that resulted in an "ascertainable loss" to Plaintiff, the annual increases in Plaintiff's monthly payments were perfectly consistent with the terms of his Adjustable Rate Note. The Adjustable Rate Note provided that Plaintiff's monthly payment "may change . . . beginning on the first day of July, 2005, and on that day every 12th month thereafter," a date the note defined as the "Payment Change Date."[98] The Adjustable Rate Note went on to explain how the Note Holder would calculate the new monthly payment taking effect on each Payment Change Date. The Note Holder was to "calculate the amount of the monthly payment that would be sufficient to repay the unpaid principal that [Plaintiff was] expected to owe at the Payment Change Date in full on the maturity date in substantially equal installments at the interest rate effective during the month preceding the Payment Change Date," a payment defined as the "Full Payment."[99] The Note Holder was also to "calculate the amount of [Plaintiff's] monthly payment due the month preceding the Payment Change Date multiplied by the number 1.075," resulting in a payment defined as the "Limited Payment."[100] Plaintiff's new monthly payment effective on the Payment Change Date, that is, on July 1, would be the lesser of the Limited Payment and the Full Payment.[101] By signing the Adjustable Rate Note, Plaintiff agreed to "pay the amount of my new

---

[98] Adjustable Rate Note § 3(C).

[99] *Id.* at § 3(D).

[100] *Id.*

[101] *Id.*

monthly payment each month beginning on each Payment Change Date . . . ."[102]

Construing these terms of the Adjustable Rate Note, the Court holds that the increases on each Payment Change Date did not constitute "ascertainable losses" resulting from any violation of the TCPA. On the contrary, each new monthly payment was calculated precisely according to the terms of the Adjustable Rate Note and took effect on the Payment Change Dates defined in the note. The undisputed evidence shows that Plaintiff's monthly payments were equal to the "Limited Payment," which was the product of Plaintiff's current monthly payment and a multiplier of 1.075. For instance, Plaintiff's initial monthly payment was $2,666.01. Effective July 1, 2005, which was the first Payment Change Date, the monthly payment increased to $2,865.96. Reasonable minds could not differ that this new payment of $2,865.96 was the product of Plaintiff's previous monthly payment of $2,666.01 and 1.075. Each increase in Plaintiff's monthly payment was calculated according to this same formula and represented the amount defined in the Adjustable Rate Note as the "Limited Payment." Effective July 1, 2006, which was the second Payment Change Date, the monthly payment increased to $3,080.91, which is the product of the then-current monthly payment of $2,865.96 and 1.075. On the third Payment Change Date, i.e. July 1, 2007, the monthly payment rose to $3,311.98, the product of the previous monthly payment of $3,080.91 and 1.075. As of the fourth Payment Change Date, July 1, 2008, Plaintiff's monthly payment rose to $3,560.38, which is the product of the previous monthly payment of $3,311.98 and 1.075. In other words, Plaintiff received exactly "what was promised" in the Adjustable Rate Note when his monthly payments rose every Payment Change Date.[103] Therefore, the Court concludes that Plaintiff has failed to establish

---

[102] *Id.* at § 3(C).

[103] *Morgan*, 363 S.W.3d at 496.

that he suffered an "ascertainable loss" due to these increases in his monthly payment through July 2009.

Moreover, Plaintiff has not proved that the increase in his monthly payment effective July 1, 2009 was an "ascertainable loss" resulting from any violation of the TCPA. The Adjustable Rate Note specified that Plaintiff would begin making the "Full Payment," i.e. a fully amortized payment, as his monthly payment on "the fifth Payment Change date," that is, on or around July 1, 2009.[104] Effective July 1, 2009, Plaintiff's monthly payment rose to $4,024.19.[105] Plaintiff has not shown that his monthly payment of $4,024.19 represented anything other than a fully amortized payment consistent with the terms of the Adjustable Rate Note. Therefore, this evidence does not constitute proof of an "ascertainable loss" for purposes of Plaintiff's TCPA claim.

Plaintiff is left to rely then on his claims for compensatory damages due to his need for additional credit to make the increased payments and damages for mental stress and anxiety. Plaintiff argues that as a result of his increased payments, he suffered "payment shock" and was forced to exhaust other sources of credit in order to make the higher payments. As previously explained, Plaintiff's need for additional resources to cover his payment increases resulted from the operation of the Adjustable Rate Note, and not any unfair or deceptive conduct of Bank of America. The Court holds then that these expenses do not constitute an "ascertainable loss" to support Plaintiff's TCPA claim. Furthermore, damages for emotional distress will not state a claim for an

---

[104] Adjustable Rate Note § 3(G).

[105] Pl.'s Supp. Resp. to Def.'s First Set of Interrogatories no.8.

"ascertainable loss of money or property" under the TCPA.[106]  Therefore, in the absence of some evidence to show that Bank of America's conduct resulted in an "ascertainable loss" to Plaintiff, Defendants are entitled to judgment as a matter of law on Plaintiff's claim that Bank of America failed to explain why his payments were increasing or how his payments were being applied to his principal balance.  Defendants' Motion for Summary Judgment is **GRANTED** on this issue.

## CONCLUSION

The Court holds that Defendants are entitled to judgment as a matter of law on Plaintiff's claims for violations of the Truth in Lending Act and the Tennessee Consumer Protection Act. Plaintiff has failed to present "specific facts showing there is a genuine issue for trial" on these claims.  Therefore, Defendants' Motion for Summary Judgment is **GRANTED**.

**IT IS SO ORDERED.**

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: May 10, 2013.

---

[106] *Pagliara*, 708 F.3d at 820 (citing *Akers v. Prime Succession of Tenn., Inc.*, No. E2009–02203–COA–R3–CV, 2011 WL 4908396, at *26 (Tenn. Ct. App. Oct. 17, 2011); *Searle v. Harrah's Entm't, Inc.*, No. M2009–02045–COA–R3–CV, 2010 WL 3928632, at *12 (Tenn. Ct. App. Oct. 6, 2010).