IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| SAMUEL R. HUMPHREYS ) | |
| ) | |
|     Plaintiff, ) | |
| ) | Case No. 2:11-cv-02514-STA-tmp |
| v. ) | |
| ) | |
| BANK OF AMERICA, ) | |
| ) | |
|     Defendant. ) | |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND DENYING MOTION TO CONTINUE TRIAL AS MOOT**

Plaintiff Samuel R. Humphreys filed this lawsuit in the Shelby County Chancery Court against BAC Home Loan Servicing, LP, f/k/a Countrywide Home Loans Servicing, LP, Corp. (ECF No. 1-1.)[1] Defendant removed the action to this court. (ECF No. 1.) Subsequently, BAC Home Loans Servicing, LP merged with and into Bank of America, N.A. ("BANA"). Thus, BANA is defending the action and has filed a motion for summary judgment. (ECF No. 71.) Plaintiff has filed a response to the motion, (ECF No. 76), and BANA has filed a reply to the response. (ECF No. 77.) The parties have filed a joint motion to continue the trial of this matter. (ECF No. 78.) For the reasons set forth below, BANA's motion for summary judgment is **GRANTED**. The motion to continue the trial is **DENIED** as moot.

Federal Rule of Civil Procedure 56(a) provides that a party is entitled to summary judgment if the moving party "shows that there is no genuine dispute as to any material fact and

---

[1] On April 27, 2009, Countrywide Home Loans Servicing, LP changed its name to BAC Home Loans Servicing, LP.

the movant is entitled to judgment as a matter of law."[2] In reviewing a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party,[3] and it "may not make credibility determinations or weigh the evidence."[4] When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial."[5] It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts."[6] These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict.[7] When determining if summary judgment is appropriate, the Court should ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."[8] The Court must enter summary judgment "against a party who fails to make a showing

---

[2] Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Eastham v. Chesapeake Appalachia, L.L.C.*, 754 F.3d 356, 360 (6th Cir. 2014).

[3] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[4] *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014).

[5] *Celotex*, 477 U.S. at 324. Plaintiff has failed to respond to Defendant's Statement of Material Facts (ECF No. 73) as required by Local Rule 56.1(d). Moreover, although Plaintiff purportedly filed a Statement of Additional Facts with his response, his "additional material facts" are either portions of depositions without pinpoint cites (ECF Nos. 76-1, 76-3), blank pages (ECF No. 76-2), or a copy of an unreported case. (ECF No. 76-4). Therefore, the facts in Defendant's statement have been considered to be undisputed. *See* LR 56.1(d).

[6] *Matsushita*, 475 U.S. at 586.

[7] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

[8] *Id.* at 251–52.

sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial."[9]

This lawsuit arises out of a pay option adjustable rate mortgage ("ARM") that Plaintiff obtained from Countrywide Home Loans, Inc. ("CHLI") in 2004. Plaintiff alleges that CHLI fraudulently induced him to enter into the pay option ARM. (Cmplt., ECF No. 1-1.) Plaintiff brought his claims under the Tennessee Consumer Protection Act ("TCPA"), Tenn. Code Ann. §47-18-101, et. seq.; the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, et seq.; and Regulation Z promulgated thereunder, 12 C.F.R. § 226, et. seq; he also asserted state law claims of negligent and intentional misrepresentation. (Amd. Cmplt., ECF No. 22.) Plaintiff sought rescission of the mortgage loan transaction and restitution of monies paid. (Cmplt, ECF No. 1-1.)

In an order entered on March 26, 2012, the Court, *inter alia*, dismissed Plaintiff's claim of fraud in the inducement of the loan transaction, dismissed the TCPA claims related to the acts leading up to the signing of Plaintiff's mortgage as time barred, and dismissed the claims for negligent and intentional misrepresentation as time barred. (Order P. Grt'ing & P. Denying Mot. to Dismiss, ECF No. 23.) On May 13, 2013, the Court granted Defendants' motion for summary judgment and dismissed all remaining claims. (Order Grt'ing Mot. Summ. J., ECF No. 49.)

Plaintiff subsequently appealed to the Sixth Circuit Court of Appeals. (ECF No. 51.) The Court of Appeals affirmed the dismissal of all claims against BAC and all claims against BANA except for Plaintiff's "fraudulent inducement claim and any overlapping portion of the intentional misrepresentation claim," *Humphreys v. Bank of Am.*,[10] and remanded the case to this Court for further proceedings. (*Id.*, ECF No. 52.)

---

[9] *Celotex*, 477 U.S. at 322.

[10] 557 F. App'x 416, 426 (6th Cir. 2014).

3

The matter is now before the Court on BANA's motion for summary judgment on the sole remaining claim of rescission based on fraud in the inducement of the loan agreement.[11] BANA contends that Plaintiff's claim fails for two reasons: (1) BANA cannot be held liable for any fraud in CHLI's origination of the Loan because CHLI is a separate legal entity, and (2) Plaintiff cannot establish the elements of a fraudulent inducement claim because there is no evidence that BANA knowingly made any false statement to Plaintiff with the intent to deceive him, Plaintiff cannot establish reasonable reliance because he did not rely on any false statements made by BANA, and any alleged reliance was not reasonable in light of the multiple documents signed by Plaintiff that outline the terms of the Loan. (Def's Mot. Summ. J., ECF No. 71.)

Plaintiff has responded that, although the loan did not originate with BANA, BANA was assigned the loan when it merged with BAC Home Loans Servicing, LP, f/k/a Countrywide Home Loans Servicing, LP and, as an assignee, is subject to all defenses that Plaintiff could have raised against CHLI, the assignor. (Pl's Resp., p. 11, ECF No. 76.) According to Plaintiff, "BANA is subject to Plaintiff's claim of fraud in the inducement in the origination of the loan and the equitable remedies afforded to Plaintiff," and "any rights that BANA would have to collect payments pursuant to the Promissory Note or to attempt to foreclose on the property pursuant to a Deed of Trust would emanate from the validity of those documents and any contractual relationship with the assignor of them." (*Id.*) Plaintiff also contends that he can establish the elements of his fraudulent inducement claim by showing that there were "false and

---

[11] The Court of Appeals noted that "[t]o the extent that Humphreys's intentional misrepresentation claim coincides with his fraudulent inducement claim in seeking rescission of the loan, he may pursue that theory as part of his fraudulent inducement claim." *Humphreys*, 557 F. App'x at 423. However, Plaintiff could not bring a separate, independent claim for intentional misrepresentation. *Id.* Accordingly, only Plaintiff's claim for fraudulent inducement is pending before the Court.

intentionally misleading statements" in the loan documents and that he reasonably relied on those statements. (*Id.*, pp. 15-16.)

BANA's Statement of Material Facts ("SOMF") (ECF No. 73) shows as follows.[12] Plaintiff is an experienced financial advisor with over thirty years of experience in the financial industry. (SOMF ¶ 3.) On May 14, 2004, Plaintiff entered into a loan agreement with CHLI and executed a promissory note ("Note") and Deed of Trust (collectively with the Note, the "Loan") in favor of CHLI in the amount of $800,000.00. (SOMF ¶ 1.) The Loan was a refinance of an existing adjustable rate mortgage ("ARM") loan with Wells Fargo Bank, N.A. and related to real property located at 214 Tuckahoe Cove, Memphis, Tennessee 38117 (the "Property"). (SOMF ¶¶ 2-6.)

Because of an impending balloon payment with the Wells Fargo Loan, Plaintiff researched refinance loan options prior to entering into the Loan with CHLI. (SOMF ¶¶ 5-6, 8.) As part of Plaintiff's research regarding refinance opportunities, he contacted several lenders. (SOMF ¶ 7.) After researching the matter, Plaintiff decided that he wanted a pay option ARM type of loan "because of the enticing rate" offered by such loan products. (SOMF ¶ 5.) Plaintiff understood the concept of an ARM loan, i.e., an ARM was not a conventional fixed rate mortgage and there would be a balloon payment. (SOMF ¶ 9.)

---

[12] BANA's Statement of Material Facts has been deemed undisputed. *See supra note*. In his response, Plaintiff cites to his "Additional Material Facts" exhibit (ECF No. 76-2), but this exhibit contains eighty-five blank pages. Additionally, although Plaintiff has generally cited to his own deposition (fifty-six pages) (ECF No. 76-1), and the deposition of Jeremy N. Klos-Mayhall (153 pages) (ECF No. 76-3), he has not pointed to any page or line numbers in those depositions. In ruling on a motion for summary judgment, "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989). "[J]udges are not like pigs, hunting for truffles that might be buried in the record." *Patterson v. Best Buy Co., Inc.*, 2015 WL 248433 (S.D. Ohio) (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir.1991)).

Plaintiff was referred to CHLI by a friend who was a residential real estate closing attorney. (SOMF ¶ 4.) Plaintiff had at least one conversation with a CHLI employee prior to entering the Loan; however, he cannot recall the details of the conversation. (SOMF ¶ 10.) Ultimately, Plaintiff decided to select the Loan offered by CHLI because CHLI was offering the best interest rate and the best loan to value ratio. (SOMF ¶ 8.)

Plaintiff signed a series of documents nine days before the closing of the Loan, including an Adjustable Rate Mortgage (ARM) Loan Program Disclosure ("First ARM Disclosure"). (SOMF ¶¶ 11, 13.) The First ARM Disclosure specifies that the Loan payment can change and describes how the payment will be calculated after the first year and warns about the possibility for negative amortization. (*Id.*; ECF No. 72-3, Ex. C.)

Before closing on the Loan, Plaintiff also signed a Lock-In Agreement dated May 5, 2004. (SOMF ¶ 12; ECF No. 72-4, Ex. D.) The first page of the Lock-In Agreement outlines the proposed terms of the Loan and clearly states that the loan type is a pay option ARM. (ECF No. 72-4, p. 1, Ex. D.) Plaintiff was instructed in writing to contact CHLI with any questions about the terms and conditions of the Loan. (ECF No. 72-4, p. 3, Ex. D.) Also before the Loan closing, Plaintiff signed a preliminary Truth In Lending Disclosure Statement ("Preliminary TILA Disclosure"). (SOMF ¶ 13; ECF No. 72-5, Ex. E.) The Preliminary TILA Disclosure states that the Loan is a pay option ARM and lists estimated payments which show that the monthly payments will increase each year in July. (ECF No. 72-5, Ex. E.)

In connection with the closing of the Loan on May 14, 2004, Plaintiff signed several documents outlining the terms of the Loan. (SOMF ¶¶ 1, 14-16.) At the top of the Note is a bolded paragraph that states:

> **THIS NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE AND THE MONTHLY PAYMENT. THERE MAY BE A**

**LIMIT ON THE AMOUNT THAT THE MONTHLY PAYMENT CAN INCREASE OR DECREASE. THE PRINCIPAL AMOUNT TO REPAY COULD BE GREATER THAN THE AMOUNT ORIGINALLY BORROWED, BUT NOT MORE THAN THE LIMIT STATED IN THIS NOTE.**

(SOMF ¶ 1; ECF No. 72-1, Ex. A.) Paragraph 2 of the Note discusses the interest rate for the Loan and states that the interest rate can change "on the first day of July, 2004, and on that day every month thereafter." (*Id.*) Paragraph 3 of the Note describes the Loan payments and states when and how the payments can change throughout the life of the Loan. (*Id.*)

In addition to the Note, Plaintiff signed an Adjustable Rate Rider to the Deed of Trust. (SOMF ¶ 15; ECF No. 72-2, Ex. B.) The Rider mirrors the terms of the Note, even containing the same bolded paragraph as the Note quoted above. (*Id.*)

Plaintiff signed a second Adjustable Rate Mortgage (ARM) Loan Program Disclosure (the "Second ARM Disclosure") on May 14, 2004. (SOMF ¶ 14; ECF No. 72-6, Ex.F.) As with the First ARM Disclosure, the Second ARM Disclosure explained how and why the interest rate and payment amount could change pursuant to the terms of the Loan. (*Id.*) Plaintiff also signed a final Truth In Lending Disclosure Statement (the "Final TILA Disclosure"). (SOMF ¶ 16; ECF No. 72-7, Ex. G.)

The current interest rate for the Loan is two percent. (SOMF ¶ 20.) Plaintiff is current on his payments, and the Property has never been foreclosed on. (SOMF ¶ 19.)

CHLI was the original lender, and BANA was only the servicer; however, BANA is no longer the servicer of the Loan. (*Id.*) BANA and CHLI never merged, and CHLI is a separate legal entity registered with the Tennessee Secretary of State. (SOMF ¶¶ 21, 23-24.) BANA is a subsidiary of Bank of America Corporation. (ECF No. 2.)

In Tennessee, a party making a fraudulent inducement claim has the burden of proving that the defendant (1) made a false statement concerning a fact material to the transaction, (2) with knowledge of the statement's falsity or utter disregard for its truth, (3) with the intent of inducing reliance on the statement, (4) the statement was reasonably relied on, and (5) an injury resulted from this reliance.[13] Claims for fraudulent inducement may involve false statements of past or present facts or false promises made without the present intent to perform.[14]

As an initial matter, BANA argues that Plaintiff cannot state a fraudulent inducement claim against it because it did not originate the Loan. According to BANA, because BANA and CHLI are separate legal entities, it cannot be held liable for alleged fraud by CHLI. BANA correctly points out that there is no evidence of any agency relationship between BANA and CHLI.[15]

In response, Plaintiff asserts that the issue of the origination of the Loan is irrelevant because the remedy sought is recession. Plaintiff reasons that, since BANA "stepped into the shoes" of CHLI when it became the assignee of the Loan and "should not be able to enforce or collect on a note that was fraudulent in its making," BANA's contractual rights to the Loan are

---

[13] *Baugh v. Novak*, 340 S.W.3d 372, 388 (Tenn. 2011); *Lamb v. MegaFlight, Inc.*, 26 S.W.3d 627, 630–31 (Tenn. Ct. App. 2000).

[14] *Lowe v. Gulf Coast Dev., Inc.*, 1991 WL 220576, at *7 (Tenn. Ct. App. Nov. 1, 1991).

[15] "The concept of agency, in its broadest sense, includes every relation in which one person or entity acts for or represents another." *Gordon v. Greenview Hosp., Inc.* 300 S.W.3d 635, 653 (Tenn. 2009) (citations omitted). "An agency relationship will be found to exist if the facts establish it, whether that was the intention of the parties or not." *Hagan v. Phipps*, 2010 WL 3852310, at *4 (Tenn. Ct. App. Sept. 28, 2010) (citing *White v. Revco Disc. Drug Ctrs., Inc.*, 33 S.W.3d 713, 723 (Tenn. 2000)). Whether an agency relationship exists is a question of fact under the circumstances of the particular case. *See McInturff v. Battle Ground Academy of Franklin*, 2009 WL 4878614, at *2 (Tenn. Ct. App. Dec. 16, 2009) (citations omitted).

subject to Plaintiff's claims against CHLI.[16] Thus, according to Plaintiff, the servicer of the Loan is the proper party to the lawsuit.[17]

Plaintiff does not address the fact that, just as CHLI does not presently hold any interest in the Loan, neither does BANA. The undisputed facts show that BANA no longer services the Loan, and the owner of the Loan is an entity other than BANA.[18] Therefore, accepting Plaintiff's reasoning for the purpose of deciding this motion, BANA cannot be liable for Plaintiff's claim for fraudulent inducement because it is no longer the servicer of the Loan.

Additionally, Plaintiff has pointed to no evidence that BANA took its interest with any knowledge of the alleged fraudulent inducement by CHLI. This failure to introduce evidence of BANA's knowledge defeats Plaintiff's claim against BANA, a subsequent holder.[19]

Even if Plaintiff could show that BANA is liable for alleged fraudulent inducement by CHLI, Plaintiff has failed to point to any false statement by CHLI concerning a material fact[20] of

---

[16] (Pl's Resp., p. 11, ECF No. 76.)

[17] The issue of whether CHLI is the proper Defendant is not before the Court since the parties agree that CHLI transferred both its legal and beneficial interest in the Note and Deed of Trust to BANA. (SOMF ¶ 17, ECF No. 73.)

[18] (*Id.*, ¶¶ 17-18.)

[19] *See Fed. Deposit Ins. Corp. v. Armstrong*, 784 F.2d 741, 745 (6th Cir. 1986) (subsequent holder not liable for fraudulent inducement because there was "not even a scintilla of evidence of actual knowledge").

[20] The Tennessee Court of Appeals has defined a fact as "material" if

(a) a reasonable [person] would attach importance to its existence or nonexistence in determining his [or her] choice of action in the transaction in question; or

(b) the maker of the representation knows or has reason to know that its recipient regards or is likely to regard the matter as important in determining his [or her] choice of action, although a reasonable [person] would not so regard it.

the Loan made with knowledge of its falsity and intended to induce reliance. Plaintiff has not alleged that CHLI made any specific false statements that induced him into entering the Loan transaction. In fact, he has testified that he does not recall any specific details of conversations he had with CHLI representatives prior to the Loan closing.[21]

Plaintiff contends that a fraudulent inducement claim can be based on confusing terms in the Loan documents, as opposed to a false statement.[22] Plaintiff has cited no legal authority for his contention. To the contrary, the elements for fraudulent inducement require "a false statement concerning a fact material to the transaction."[23] Plaintiff's mistaken belief about the terms of the Loan cannot support a claim for fraudulent inducement.

However, even if Plaintiff's interpretation of the law were correct, the terms of the Loan are clearly set out in the Loan documents. While Plaintiff points to the phrase "yearly rate" as evidence that his interest rate would not change for a year, Section 2 of the Note states, "[t]he interest rate I will pay may change."[24] Moreover, Section 2(B) of the Note states that the interest rate could change as soon as July 1, 2004:

> The interest rate I will pay may change on the first date of July, 2004, and on that day every month thereafter. Each date on which my interest rate could change is called an "Interest Rate Change Date." The new rate of interest will become effective on each Interest Rate Change Date.[25]

---

*Odom v. Oliver*, 310 S.W.3d 344, 349 (Tenn. Ct. App. 2009) (quoting *Patel v. Bayliff*, 121 S.W.3d 347, 353 (Tenn. Ct. App. 2003)).

[21] (SOMF ¶ 10.)

[22] (Pl's Resp., pp. 15-17, ECF No. 76.)

[23] *Baugh*, 340 S.W.3d at 372.

[24] (ECF No. 72-1, Ex. A.)

[25] (*Id.*)

Additionally, Section 3 of the Note clearly defines when and how the payments could change over the life of the Loan.[26] Furthermore, Plaintiff signed at least six other documents at or before the Loan closing that provided him with additional information regarding the terms and nature of the Loan.[27] Plaintiff's misunderstanding of the terms of the Loan, without more, cannot support a claim of fraudulent inducement.[28]

Plaintiff's claim also fails because he cannot show that he reasonably relied on a material false statement. "Lack of evidence that the plaintiff relied on an alleged deception precludes a recovery for fraudulent concealment and fraudulent misrepresentation."[29] It is undisputed that Plaintiff, a thirty year veteran of the financial services industry, sought out the specific pay option ARM that he received from CHLI.[30] Plaintiff was referred to CHLI by a friend who acted as the closing attorney for the Loan.[31] Plaintiff research various lenders, and he ultimately selected the Loan with CHLI "because of the enticing rate" and the ability to get cash back as a result of the Loan.[32] The undisputed facts show that Plaintiff's own financial needs led him to

---

[26] (*Id.*)

[27] (SOMF ¶¶ 11-16, ECF No. 73.)

[28] *See Smith v. BAC Home Loans Servicing, LP*, 552 F. App'x 473, 477 (6th Cir. 2014) (mistaken beliefs insufficient to state a claim for fraudulent inducement.) *See also Thompson v. Bank of Am., N.A.*, 773 F.3d 741, 752 (6th Cir. 2014), *reh'g denied* (Dec. 24, 2014) ("Without a plausible material misrepresentation, Thompson has no basis for a claim of fraudulent inducement or intentional misrepresentation at the time of closing.")

[29] *Burton v. Hardwood Pallets, Inc.*, 2004 WL 572350, at *2 (Tenn. Ct. App. Mar. 22, 2004).

[30] (SOMF ¶ 3; Am. Cmplt., ¶ 52.)

[31] (SOMF ¶ 4.)

[32] (SOMF ¶¶ 5-9.)

select the CHLI Loan and not any representations by CHLI. It was Plaintiff's responsibility to ask for clarification if he was confused about any terms of the Loan.[33]

Plaintiff attempts to show his reliance by citing to BANA's corporate representatives' hindsight understanding of the Loan terms. However, Plaintiff cannot show that he relied on their understanding since they were not involved in the origination of the Loan. Despite Plaintiff's contentions, he has not cited any evidence in the record regarding how he actually relied on any false statements.[34]

The undisputed facts show that Defendant BANA, who is no longer the servicer of the Loan, cannot be held liable for the remedy of rescission that Plaintiff seeks. Moreover, Plaintiff has not pointed to any false material fact that he reasonably relied on when entering into the terms of the Loan. Therefore, BANA is entitled to judgment as a matter of law, and BANA's motion for summary judgment (ECF No. 71) is **GRANTED**. The joint motion to continue the trial (ECF No. 78) is **DENIED** as moot.

**IT IS SO ORDERED.**

s/ S. Thomas Anderson
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: October 13, 2015.

---

[33] *See Roopchan v. ADT Sec. Sys., Inc.*, 781 F. Supp. 2d 636, 654 (E.D. Tenn. 2011) ("[T]he Court finds that Plaintiff had both the means to learn about the cellular back-up, and the business experience. When Plaintiff chose not to read the contracts, he did not exercise ordinary diligence."); *see also* R*obert J. Denley Co. v. Neal Smith Const. Co.*, 2007 WL 1153121, at *6 (Tenn. Ct. App. Apr. 19, 2007) ("There is no duty to disclose a material fact if it was apparent through 'common observation' or if it would have been discoverable through the exercise of ordinary diligence.")

[34] (Pl's Resp. pp. 7-9, 16-17, ECF No 76.)